```
                  United States District Court
                    District of Massachusetts
 _____
                                 )
NORTH SHORE HOME MEDICAL SUPPLY, )
INC. d/b/a HOME CARE PHARMACY,   )
                                 )
        Plaintiff,               )
                                 )   Civil Action No.
        v.                       )   15-12874-RWZ
                                 )
CATAMARAN PBM OF ILLINOIS, INC., )
                                 )
        Defendant.               )
 _____
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations by plaintiff North Shore Home Medical Supply, Inc. d/b/a Home Care Pharmacy ("Home Care") that defendant Catamaran PBM of Illinois, Inc. ("Catamaran") breached the contract governing their relationship when it removed Home Care as an approved pharmacy under its prescription drug coverage network ("the Catamaran Network"), effective as of July 21, 2015. Pending before the Court is Home Care's emergency motion for injunctive relief in which it seeks to enjoin Catamaran from effectuating its removal from the Catamaran Network. According to Home Care, it faces irreparable harm absent the injunction because it will lose a significant portion of its customer base who will be forced to turn to other

pharmacies that remain members of the Catamaran Network. For the reasons that follow, the motion will be denied.

## I. Background

### A. Facts

Home Care is a Massachusetts corporation operating in Peabody, Massachusetts as a full-service retail pharmacy with specialties in providing pharmaceutical compliance packaging and prescription home delivery service to patients unable to leave their homes. Neil Welch ("Welch") has served as Home Care's President and Chief Pharmacist since its founding in 2013.

Catamaran is an Illinois corporation and is a large, nationwide pharmacy benefits manager ("PBM").

In March, 2014, Home Care became a party to a provider agreement ("the Provider Agreement") previously signed by a broker on behalf of a collection of pharmacies, whereby Home Care would be included in the prescription provider network for policyholders of health care plans under which Catamaran served as PBM. The Provider Agreement governs the relationship between the parties and incorporates by reference a provider manual ("the Provider Manual"). In relevant part, Section 5.C of the Provider Manual states that

> Catamaran may immediately terminate the Provider Agreement for cause ... [if it determines that a pharmacy has a] [c]urrent ... affiliation ... to a pharmacy that was terminated under any of the above listed conditions associated with fraud and/or abuse. Affiliation

-2-

includes ownership or controlling interest in any percentage; holding of the physical real estate of the pharmacy location; a consultant relationship; employment of current and/or prior employees; immediate relatives ... or otherwise obscuring ownership links.

In October, 2014, Catamaran became aware that Ciampa Apothecary ("Ciampa"), a pharmacy which it had removed from the Catamaran network in 2013 for purported fraud and abuse it uncovered during an internal audit, was in the process of opening a new pharmacy in Peabody. Due to its location in Peabody and recent incorporation, Catamaran tasked its Special Investigations Unit with scrutinizing Home Care. The investigation revealed a number of connections between Ciampa and Home Care, most notably that 1) the website for Ciampa reported its closure but stated that "we are ... still offering our [various services] ... out of our new company and facility in Peabody" and included a link to www.route1health.com which took visitors to Home Care's website and 2) Home Care's Annual Report for Domestic Corporations filed with the Commonwealth of Massachusetts for fiscal year 2014 identified both Joseph Ciampa and Walter Ciampa as Directors.[1]

In a letter dated June 4, 2015, Catamaran informed Home Care that it was evaluating Home Care's continued participation

---

[1] At the hearing on the pending motion, plaintiff admitted Home Care's affiliation with Ciampa Apothecary and stated that both Joseph and Walter Ciampa work as pharmacists for it and own the building in which it is located.

-3-

as an approved pharmacy in the Catamaran network as the result of "[Home Care's] association with a previously terminated pharmacy, Ciampa Apothecary". The letter stated that Catamaran's Pharmacy Membership Evaluation Committee (PMEC) would consider any response submitted by Home Care but the response would need to be received before June 10, 2015.

Counsel for Home Care responded on June 9, 2015 and reported that neither Home Care nor Welch had been disciplined by any regulatory organization or had been the subject of any action by the Commonwealth of Massachusetts. It further requested that Catamaran specify any documentation sought by the PMEC. Home Care's response, however, failed to address the contention made by Catamaran that Home Care was associated with Ciampa.

On June 18, 2015, Catamaran sent notice to Home Care that it was removing Home Care from the Catamaran network, effective July 21, 2015. Catamaran noted that its action was "due to [Home Care's] ownership or management [being] linked to a terminated pharmacy, Ciampa Pharmacy". Catamaran also advised Home Care that it had the opportunity to appeal its removal from the Catamaran Network. According to Catamaran, Home Care has yet to file an appeal of its termination decision.

After Home Care received notice of termination from the Catamaran Network, Home Care repeatedly requested a copy of the Provider Agreement without response.

**B.   Procedural History**

On July 2, 2015, Home Care filed the instant lawsuit and sought immediate injunctive relief through an emergency motion for a temporary restraining order.[2]  The four-count complaint asserts claims for 1) breach of contract, 2) breach of the covenant of good faith and fair dealing, 3) breach of the Any Willing Provider Act, M.G.L. c. 176D, § 3B, and 4) unfair and deceptive trade and practice in violation of M.G.L. c. 93A ("Chapter 93A").

Defendant responded to the pending motion and a hearing was held shortly thereafter.

**II.  Plaintiff's Motion for Injunctive Relief**

**A.   Legal Standard**

In order to obtain preliminary injunctive relief, the moving party must establish

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships and (4) a fit (or lack of friction) between the injunction and the public interest.

---

[2] The case is assigned to Senior United States District Judge Rya Zobel but this Session is assigned to rule on the pending motion.

Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted).  The likelihood of success on the merits is

> the sine qua non of the four-part inquiry ... [because] if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.

New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

The standard is the same regardless of whether the moving party seeks a temporary restraining order or a preliminary injunction.  See, e.g., Largess v. Supreme Judicial Ct., 317 F. Supp. 2d 77, 81 (D. Mass. 2004); Quincy Cablesys., Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1160 (D. Mass. 1986). Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976)).  The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion

for injunctive relief. See Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).

**B. Application**

    **1. Likelihood of Success**

        **i. Breach of Contract (Count I)**

In order to prevail on a claim for breach of contract under Massachusetts law, a plaintiff must prove 1) the existence of a valid, binding contract, 2) that the defendant breached the terms of the contract and 3) that the plaintiff suffered damages as result of the breach. Young v. Wells Fargo Bank, 717 F.3d 224, 232 (1st Cir. 2013).[3]

Home Care contends that Catamaran breached the Provider Agreement by terminating it as an approved pharmacy in the Catamaran Network based on its purported association with Ciampa. To support its argument, Home Care notes that its ownership and management has not changed since it was incorporated in 2013, a time before it had contracted with Catamaran. It thus avers that Catamaran's justification for its termination from the Catamaran Network is untenable and pretextual.

---

[3] The Provider Agreement includes an Illinois choice-of-law provision and forum selection clause but, in the absence of any briefing on the issue, the Court declines to address it.

Plaintiff, however, ultimately fails to dispute, and in fact concedes, the central allegation in Catamaran's termination letter, i.e., that it is associated with a pharmacy previously terminated from the Catamaran Network.  Catamaran has introduced ample evidence of such a connection between Home Care and Ciampa and, therefore, was entitled to terminate Home Care from the Catamaran Network according to the plain language of the Provider Manual.  Notwithstanding that Catamaran was initially unaware of the connection between Home Care and Ciampa, it is not foreclosed from terminating the contract upon discovering such a connection.

Accordingly, the Court concludes that Home Care has failed to show a likelihood of success on its breach of contract claim.

> ### ii.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Every contract in Massachusetts contains an implied covenant of good faith and dealing providing that each party involved will not

> do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 254 (2014) (citation omitted).  Such a covenant exists to ensure that the objectives of the contract may be realized. Id.

Home Care argues that Catamaran's course of conduct in terminating the Provider Agreement constitutes a breach of the implied covenant. In particular, Home Care contends that Catamaran "evade[d] the spirit of their contractual relationship" by 1) demanding a response to its initial June 4 letter within such a short timeframe (six days), 2) utilizing a boilerplate letter to summarily state that it was terminating the contract and 3) continuously failing to provide the requested copy of the Provider Agreement to Home Care.

The Court disagrees. First, Catamaran gave sufficient time to respond to its initial letter, evidenced by Home Care's letter in response sent to Catamaran on June 9, 2015. Home Care's letter, however, did nothing to rebut the principal allegation for its potential termination by Catamaran and, subsequently, Home Care was notified of its termination from the Catamaran Network. The termination notice provided Home Care with a straightforward and reasoned explanation of its decision and notified Home Care of its right to appeal to Catamaran for reconsideration.

Finally, Catamaran failed to respond to Home Care's seemingly innocuous request for a copy of the Provider Agreement apparently because that agreement, of which Home Care was simply a third party beneficiary, was negotiated between Catamaran and a broker and was not intended to be made available to individual

-9-

pharmacies.  The Provider Manual was, however, available at all times to plaintiff through an online portal.  Ultimately, the Court concludes that none of aforementioned conduct is sufficient to establish a likelihood of success on Home Care's claim for breach of the implied covenant of good faith and fair dealing.

### iii. Breach of the Any Willing Provider Act, M.G.L. c. 176D, § 3B (Count III)

Home Care also alleges a breach of the Massachusetts "Any Willing Provider" statute, M.G.L. c. 176D, § 3B.  That statute does not provide a private cause of action although Home Care instead may seek a remedy for a violation of the statute through Chapter 93A. J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 142 (D. Mass. 2005).

The "Any Willing Provider" statute requires, inter alia, that an insurance carrier operating a restricted pharmacy network must permit any willing pharmacy to participate in the restricted network so long as the pharmacy agrees to the same terms as all others in the network. Id. at 130; see M.G.L. c. 176D, § 3B.  It says nothing, however, about prohibiting a carrier from removing a pharmacy from its restricted network for cause upon determination that the pharmacy violated the terms and conditions required of all network participants.  The

statute does not prevent a carrier from sanctioning non-compliant pharmacy participants.

Here, the entire basis for Home Care's argument that Catamaran violated the "Any Willing Provider" statute rests on its contention that it has remained in compliance with the Provider Agreement and the Provider Manual.  The Court has, however, already found that Catamaran was justified under the Provider Manual in terminating Home Care from the Catamaran Network on account of its impermissible association with Ciampa. Thus, the Court concludes that Home Care has failed to establish a likelihood of success that Catamaran violated the "Any Willing Provider" statute.

### iv.  Chapter 93A Violation (Count IV)

Nor does Catamaran's conduct constitute "immoral, unethical, oppressive, or unscrupulous" behavior that is the prerequisite for establishing an unfair or deceptive act or practice in violation of Chapter 93A. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 11 (1st Cir. 2007). Catamaran appears to have 1) thoroughly investigated, and eventually uncovered, Home Care's connection to a pharmacy it already had terminated from the Catamaran Network, 2) made Home Care aware of its allegation, 3) given Home Care an opportunity to respond and 4) promptly notified Home Care of its termination decision with instructions as to how to appeal that decision.

Simply put, Home Care falls significantly short of establishing a likelihood of success that Catamaran's course of conduct ran afoul of Chapter 93A. See Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979) (lodestone of Chapter 93A claim is whether defendant's actions "would raise an eyebrow of someone inured to the rough and tumble of the world of commerce").

### 2. Remaining Factors

Having determined that Home Care has failed to establish a likelihood of success on the merits, the Court need not go further in its analysis. See, e.g., Am. Freedom Defense Initiative v. Mass. Bay Transp. Auth., 781 F.3d 571, 578 n.4 (1st Cir. 2015) (holding that lack of showing of likelihood of success on merits is fatal to request for preliminary injunction and thus negates the need to analyze additional factors); Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (same).  Nevertheless, the Court will make two brief, additional points.

First, Home Care notes that only 15% of its customer base is insured by health plans serviced by Catamaran.  Thus, the speculative harm, including any supposed loss of goodwill, that Home Care will purportedly suffer as a result of Catamaran's decision to remove it from the Catamaran Network is relatively minor, largely quantifiable in money damages and, therefore, not

irreparable. See IKON Office Sols., Inc. v. Belanger, 59 F. Supp. 2d 125, 132 (D. Mass. 1999) ("[L]oss of customer good will is not necessarily irreparable [because it] is frequently valued and recompensated in litigation through money damages"). But see Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19-20 (1st Cir. 1996) (where plaintiff has already established a likelihood of success on merits, injury to goodwill or reputation constituted irreparable harm because it was "not ... fully compensable in damages").

Second, the Court is sympathetic to the presumed difficulty some of Home Care's housebound customers will face in finding alternative pharmacies to fill and deliver their prescriptions after Home Care falls out of the Catamaran Network. Nonetheless, the fact remains that other pharmacies in Peabody and surrounding towns exist and, according to Catamaran's representation to the Court, are part of the Catamaran Network. That fact undercuts Home Care's assertion that the public interest and the balance of harms weigh strongly in favor of injunctive relief.

**ORDER**

For the foregoing reasons, plaintiff North Shore Home Medical Supply, Inc. d/b/a Home Care Pharmacy's emergency motion for a temporary restraining order (Docket No. 2) is **DENIED**.

**So ordered.**

                                                                                /s/ Nathaniel M. Gorton
                                                                                 Nathaniel M. Gorton
                                                                                 United States District Judge

Dated July 21, 2015